UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MATTHEW E.,

                Plaintiff,

v.                                                               CASE # 20-cv-01641

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF KENNETH HILLER, PLLC<br>  Counsel for Plaintiff<br>600 North Bailey Ave<br>Suite 1A<br>Amherst, NY 14226 | KELLY ELIZABETH<br>LAGA-SCIANDRA, ESQ.<br>KENNETH R. HILLER, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | ELIZABETH ROTHSTEIN, ESQ. |

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

      The parties consented in accordance with a standing order to proceed before the undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record and consideration of the parties' filings, the plaintiff's motion for judgment on the administrative

record is **DENIED**, the defendant's motion for judgment on the administrative record is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

I.  **RELEVANT BACKGROUND**

   A.  **Factual Background**

Plaintiff was born on November 8, 1962, and has less than a high school education. (Tr. 203, 209). At the time of application, plaintiff alleged disability due to posttraumatic stress disorder (PTSD), bipolar, anxiety, depression, elbow problems, bilateral knee problems, and memory problems. (Tr. 208). His alleged onset date of disability is April 18, 2017 and date last insured is September 30, 2018. (Tr. 203-04).

   B.  **Procedural History**

On August 18, 2017, plaintiff protectively applied for a period of Disability Insurance Benefits ("SSD") under Title II of the Social Security Act and Supplemental Security Income benefits under Title XVI of the Act. (Tr. 176-183). Plaintiff's applications were initially denied, after which he timely requested a hearing before an Administrative Law Judge (ALJ). On September 20, 2019, plaintiff appeared before ALJ Stephan Bell. (Tr. 45-75). On November 20, 2019, ALJ Bell issued a written decision finding plaintiff not disabled under the Social Security Act. (Tr. 17-33). On September 8, 2020, the Appeals Council (AC) denied plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-4). Thereafter, plaintiff timely sought judicial review in this Court.

   C.  **The ALJ's Decision**

Generally, in her decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2018.

2. The claimant has not engaged in substantial gainful activity since April 18, 2017, the alleged onset date (20 CFR 404.1571 et seq.).

3. The claimant has the following severe impairments: asthma, degenerative joint disease of the bilateral knees, anxiety disorder, bipolar disorder, post-traumatic stress disorder (PTSD), major depressive disorder, alcohol use disorder, opioid use disorder and social anxiety (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567© and 416.967© except the claimant can frequently climb ramps and stairs but only occasionally climb ladders, ropes or scaffolds. The claimant can frequently balance and stoop, but only occasionally kneel, crouch and crawl. The claimant can occasionally work in dusts, odors, fumes and pulmonary irritants. The clamant can occasionally work in vibration. The clamant can perform simple, routine tasks and make simple, work-related decisions.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on November 8, 1962, and was 54 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date. The claimant subsequently changed age category to advanced age (20 CFR 404.1563 and 416.964).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 18, 2017, through the date last insured (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 17-33).

**II.     THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION**

    **A.     Plaintiff's Arguments**

Plaintiff makes essentially two separate arguments in support of his motion for judgment on the pleadings. First, plaintiff argues the ALJ's finding of a medium RFC is not supported by substantial evidence. Second, plaintiff asserts the ALJ erred in failing to evaluate plaintiff's congestive heart failure and cardiac findings at step 2. (Dkt. No. 10 at 1 [Pl.'s Mem. of Law]).

    **B.     Defendant's Arguments**

In response, defendant makes two arguments. Defendant first argues the ALJ properly assessed the evidence of record and substantial evidence supports the ALJ's RFC finding. (Dkt. No. 11 at 6 [Def.'s Mem. of Law]).  Second, defendant contends the plaintiff failed to establish a severe cardiac impairment at step two of the sequential evaluation. (*Id*. at 14).

**III.    RELEVANT LEGAL STANDARD**

    **A.     Standard of Review**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

  **B.**  **Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity'

assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.   ANALYSIS

### A. Physical RFC

Plaintiff asserts the degree of limitation imposed by his bilateral knee impairment was not wholly clear from testimony and medical evidence and therefore the ALJ's RFC was not substantially supported but based on the ALJ's lay interpretation of evidence. (Dkt. No. 10 at 8). As an initial matter, the burden is on the plaintiff to prove his knee impairments resulted in greater limitations in standing and walking than those found by the ALJ. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) ("Smith had a duty to prove a more restrictive RFC, and failed to do so."). Further, the ALJ has the responsibility to determine a claimant's RFC based on all of the relevant medical and other evidence in the record. *See* 20 C.F.R. §§ 404.1520b, 404.1545-46, 416.920b, 416.945-46. An RFC need not track any one medical opinion. *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (finding ALJ did not impermissibly rely on his own medical judgment because "he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole"). Here ALJ Bell properly determined the RFC was based on substantial evidence, including opinion evidence from the consultative examiner, findings of the State agency medical consultant, treatment records, as well as plaintiff's testimony and self-reported activities. (*See* Tr. 26-31).

Accordingly, the ALJ considered the opinion of consultative examiner Dr. Lee and found it to be persuasive because it was supported by his exam findings and generally consistent with the

record as a whole. (Tr. 28-31). Dr. Lee examined plaintiff on October 24, 2017, and concluded that he had only mild limitations for activities involving kneeling, bending, and squatting. (*See* Tr. 28, 350-55; *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 43 (2d Cir. 2013) (consultative examiner's opinion that claimant had "mild to moderate limitations," was sufficient, coupled with other evidence to support the ALJ's RFC). Although Dr. Lee did not review magnetic resonance imaging (MIR) findings of degenerative joint disease, he did review diagnostic imaging of plaintiff's right knee which revealed moderate patellofemoral degenerative joint disease. (*See* Tr. 29, 352, 355). The examination findings supported his mild limitations opinion, including that plaintiff had a normal gait, ability to rise from a chair without difficulty, stable and nontender joints, as well as full range of motion, full (5/5) motor strength, and no evident muscle atrophy in his lower extremities. (*See* Tr. 28-29, 352). In addition, State agency medical consultant Dr. Poss reviewed the record in November 2017 and found that plaintiff could lift and/or carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk and sit each for about six hours in an eight-hour workday; engage in unlimited climbing and balancing; frequently stoop, kneel, crouch, and crawl; and must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. (*See* Tr. 30, 84-86, 367-68). The ALJ properly relied on the medical consultant opinions, which constituted substantial evidence. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) (factor of consistency); §§ 404.1513a(b)(1), 416.913a(b)(1) (State agency medical and psychological consultants are highly qualified physicians who are also experts in Social Security disability evaluation); *Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. 2016) (rejecting plaintiff's contention that State agency consultant's assessment was "stale" because it did not have the benefit of later-submitted treatment records).

The ALJ additionally supported her physical RFC finding with various findings pertaining to plaintiff's knees, gait and lower extremity strength. For example, she noted that treatment records from

January 2018 indicate plaintiff reported he was seeking benefits based on mental illness and a physical exam at that time revealed mild tenderness over bilateral patellas but otherwise normal knee findings. (Tr. 28-29, 490, 496). A May 2018 examination revealed unspecified lower extremity tenderness, but normal motor strength, a normal gait, and plaintiff was in no apparent distress. (Tr. 29, 445-46, 448, 457). In September 2018, an examination following an assault revealed that Plaintiff had a normal gait and normal range of motion and strength in his extremities. (Tr. 29, 407). In addition, during October 2018 emergency department visits for alcohol-related syncope and detoxification, plaintiff reported pain due to gout in his foot, but he walked with a steady gait. (Tr. 29, 678). Treatment notes from March 2019 document plaintiff's report of bilateral knee pain that was "moderate" and intermittent, but he had full range of motion in his knees, with no joint deformities, redness, or warmth. (Tr. 29, 794-95).

The ALJ also appropriately considered plaintiff's testimony of daily activities when formulating the RFC. *See Johnson v. Colvin*, 669 F. App'x 44, 46 (2d Cir. 2016) (rejecting plaintiff's contention that ALJ impermissibly relied on vague medical evidence and on his own lay opinion and finding that ALJ properly relied on a variety of medical and other evidence in arriving at his RFC finding, including Plaintiff's testimony that he could lift 10 to 15 pounds and performed certain activities of daily living). Plaintiff testified he was able to walk two to five miles, which the ALJ noted, yet plaintiff's brief inexplicitly contends it is not clear if plaintiff knew the distance he walked because he has a limited education and was noted once to be a poor historian while intoxicated. (Dkt. No. 10 at 9-10, Tr. 47-49, 61, 209, 721). Plaintiff additionally testified that he would have no physical problems with shopping, including walking around a store, and he cleaned his home because he was a clean freak, except he could no longer get on the roof or climb onto a chair to replace lightbulbs. (Tr. 27, 55-57, 60). He also testified that he had no problems caring for his personal hygiene, and he planned to join a health spa to "start getting in shape" to the best of his ability. (Tr. 27, 58-59). In addition, apart from his hearing testimony, other record

evidence further demonstrates that plaintiff engaged in a significant amount of walking. (Tr. 27-30, 917, 919, 979 (during mental health visits in July and August 2019, describing himself as "a walker," and stating that, when not incarcerated, "I am always out. I am not a homebody"); Tr. 457 (reporting that he enjoyed activities including "walking/running/exercise")).

In sum, it was within the ALJ's duty to make a decision based on all of the relevant evidence, including medical records, statements by physicians, and a claimant's description of his limitations. In this case, the record was sufficiently developed for the ALJ to assess plaintiff's RFC and plaintiff's disagreement with how the ALJ weighed the opinion and other evidence is not sufficient for remand. *Hill v. Berryhill*, No. 17-CV-6532P, 2019 WL 144920, at *8 (W.D.N.Y. Jan. 9, 2019) ("'[U]nder the substantial evidence standard of review, [however,] it is not enough for [p]laintiff to merely disagree with the ALJ's weighing of the evidence or to argue that evidence in the record could support [his] position.'") (internal alterations original; citation omitted)).

**B. Evaluation of Cardiac Impairment**

The ALJ found plaintiff had the severe impairments of asthma, degenerative joint disease of the bilateral knees, anxiety disorder, bipolar disorder, post-traumatic stress disorder (PTSD), major depressive disorder, alcohol use disorder, opioid use disorder and social anxiety. (Tr. 23). Plaintiff argues the ALJ erred at step two by not evaluating plaintiff's congestive heart failure which occurred in October 2019, the month between the hearing and the issuance of a decision. (Dkt. No. 10 at 12).

At step two of the sequential evaluation process, the ALJ must determine whether the plaintiff has a severe impairment that significantly limits his physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c). Although the Second Circuit has held that this step is limited to "screen[ing] out *de minimis* claims," *Dixon v. Shalala,* 54 F.3d 1019,

1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." *Coleman v. Shalala,* 895 F.Supp. 50, 53 (S.D.N.Y. 1995); *see Prince v. Astrue*, 514 F. App'x 18, 20 (2d Cir. 2013). Further, the plaintiff bears the burden of presenting evidence establishing severity. *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) *(citing Miller v. Comm'r of Social Sec.*, No. 05-CV-1371, 2008 WL 2783418, at \*6-7 (N.D.N.Y. July 16, 2008); *see also* 20 C.F.R. §§ 404.1512(a), 416.912(a).

In this case, plaintiff has not met his burden of presenting evidence that the impairment is severe. *Bowen v. Yuckert*, 482 U.S. 137, 142, n.5 (1987), *see Woodmancy v. Colvin*, 577 F. App'x 72,74 (2d Cir. 2014)(citing *Green-Younger v. Comm'r*, 335 F.3d 99, 106 (2d Cir. 2003)). Plaintiff did not allege disability due to any cardiac complaints on his initial application, prehearing memorandum that was submitted in lieu of an opening statement, or at the hearing. (Tr. 43, 208, 277). Plaintiff's representative requested the record remain open for four additional weeks to submit outstanding records. (Tr. 48). When the representative submitted records on October 7, 2019, for the October 2019 hospitalization there was only a cover letter identifying records by date and not alleging any new impairments. (Tr. 287). In an additional letter dated November 4, 2019, plaintiff's representative informed the ALJ that all records had been submitted but again did not allege any additional impairments. (Tr. 289). In a February 11, 2020 brief to the Appeals Council, plaintiff did not raise the issue of the cardiac impairments. (Tr. 295).

To be sure, plaintiff could not raise allegations of an impairment prior to experiencing it, but the burden is on the plaintiff to establish the condition caused additional limitations that lasted or were expected to last for more than 12 months. *See* 20 C.F.R. §§ 404.1509, 416.909; *Barnhart v. Walton,* 535 U.S. 212, 219 (2002) (functional limitations caused by the impairment, and not just

the diagnosis, must meet the statutory 12-month duration requirement). Not only has plaintiff failed to identify evidence that the impairment would last twelve months but he has not identified any evidence to show how the cardiac issues limited his ability to work. Britt v. Astrue, 486 F. App'x 161, 163 (2d Cir 2012) (identifying no error in ALJ's step two finding of non-severe impairments, where Britt failed to furnish any medical evidence showing how his impairments limited his ability to work). Prince v. Astrue, 490 F. App'x 399, 400 (2d Cir. 2013) (a mere diagnosis, without evidence of severity of symptoms and functional limitations, does not mandate a finding of disability).

Records from October 2019, cited by plaintiff in support of his argument, indicate plaintiff was hospitalized three days for acute congestive heart failure with resulting lower leg pain and edema. (Tr. 1144-1170). Plaintiff specifically reported the bilateral leg swelling that had only been present for two weeks. (Tr. 1158). Additionally, at that time, plaintiff reported that he had chronic shortness of breath but that he had only recently noticed some increased shortness of breath with walking. (*See* Tr. 1158). In the decision, ALJ Bell cited to those records, noting the examination revealed full range of motion in plaintiff's lower extremities and a normal gait. (Tr. 29). The ALJ also considered treatment records from earlier in the relevant period, which did not indicate abnormalities in cardiac or pulmonary function, aside from an exacerbation of asthma which was treated conservatively with Albuterol. (*See* Tr. 28, 562, 294, 298, 348, 352, 419, 425, 448, 486, 506, 613, 686, 893). ALJ Bell limited plaintiff's ability to perform postural activities involving the legs as well as work involving dust, odors, fumes and pulmonary irritants because of other severe impairments that met the durational requirement. In sum, plaintiff has failed to show any greater limitations to his ability to work because of the three-day hospitalization and cardiac issue. Notably the ALJ did state that she found any other impairment other than those listed as severe either

11

occurred outside the relevant period or presented no residual signs or symptoms expected to last at least twelve months. (Tr. 23). Although the ALJ cited obesity and hernia not requiring repair as examples, it is well-settled that the ALJ need not mention every shred of evidence, assessment, or diagnosis found in the record, and an "ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012).

**ACCORDINGLY, it is**

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 11) is **GRANTED.**

Dated: June 30, 2022  
Rochester, New York

*J. Gregory Wehrman*  
HON. J. Gregory Wehrman  
United States Magistrate Judge